**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | |
|---|---|
| TYGRIS ASSET FINANCE, INC., Successor to MARCAP LIMITED LIABILITY COMPANY, a Delaware limited liability company,<br><br>                Plaintiff,<br><br>                v.<br><br>M.A.G., L.L.C., a Louisiana limited liability company, STEVEN ZUCKERMAN and BRUCE GRIZZAFFI,<br><br>                Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)  Case No.<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**COMPLAINT FOR BREACH OF EQUIPMENT LEASE AGREEMENT
AND BREACH OF GUARANTEES**

Plaintiff, Tygris Asset Finance, Inc., successor to MarCap Limited liability company, by and through its attorneys, Gary E. Green and Adam C. Toosley of CLARK HILL PLC, as its Complaint against Defendants, M.A.G., L.L.C., Steven Zuckerman and Bruce Grizzaffi, states and alleges as follows:

**PARTIES**

1. Plaintiff, Tygris Asset Finance, Inc. as successor to MarCap Limited liability company ("Tygris"), is a Delaware limited liability company with its principal place of business in Chicago, Illinois. Tygris is duly authorized to conduct business in the State of Illinois.

2. Defendant, M.A.G., L.L.C. ("MAG"), is a Louisiana limited liability company with a disclosed principal place of business located at 12734 Frankfurt Avenue, Baton Rouge, Louisiana 70816. The only members of MAG are Bruce Grizzaffi and John Capone, III, and both are Louisiana residents.

3. Defendant, Steven Zuckerman, is a Louisiana resident with an address of 510 Hidden Lake Court, Baton Rouge, Louisiana 70810.

4. Defendant, Bruze Grizzaffi, is a Louisiana resident with an address of 12734 Frankfurt Avenue, Baton Rouge, Louisiana 70816.

5. Defendants, Steven Zuckerman and Bruce Grizzaffi, are sometimes referred to herein collectively as "Guarantors."

## JURISDICTION AND VENUE

6. This Court has jurisdiction of this action pursuant to 28 U.S.C. § 1332, in that this is an action between citizens of different states where the matter in controversy exceeds the amount of $75,000, exclusive of interest and costs.

7. Venue of this action is proper in this District pursuant to 28 U.S.C. § 1391(a), in that a substantial part of the events giving rise to the claims alleged herein occurred in this District. The Lease Agreement and Guaranty were both negotiated and entered into in Chicago, Illinois. The Lease Agreement and Guaranty also contain Northern District of Illinois jurisdiction-consent and venue-selection provisions.

## NATURE OF THE ACTION

8. This Complaint arises out of Defendants' failure to pay amounts due to Tygris under an equipment lease agreement and related guaranty. Defendant MAG executed and subsequently defaulted under an equipment lease agreement with Tygris. Guarantors signed an unconditional guaranty of all amounts due and owing to Tygris under the equipment lease agreement.

## COUNT I
## BREACH OF EQUIPMENT LEASE AGREEMENT-MAG EQUIPMENT LEASE AGREEMENT

9. Tygris repeats and realleges each of the allegations above identified as Paragraphs 1 through 8 of this Complaint as through fully set forth herein.

10. On or about December 26, 2007, MAG entered into Equipment Lease Agreement No. E7120101with Tygris. At that time, Schedule 01 to said Equipment Lease was executed. A true and correct copy of the Equipment Lease, identified with Schedule 01 is attached hereto as **Exhibit 1**.

11. Pursuant to the Equipment Lease, Tygris financed, leased and was to have delivered to MAG certain equipment as identified in the Equipment Lease.

12. Thereafter, on or about January 9, 2008, and pursuant to Schedule 02, Tygris leased and financed certain other equipment to MAG. A true and correct copy of Schedule 02 to the Equipment Lease is attached hereto as **Exhibit 2**.

13. The Equipment Lease, with Schedules 01 and 02 is collectively referred to herein as the "Equipment Lease."

14. In exchange and in consideration for Tygris leasing and financing the equipment identified in the Equipment Lease, MAG agreed to make monthly payments to Tygris in amounts as identified in the Equipment Lease.

15. On January 22, 2008 and January 31, 2008, Bruce Grizzaffi of MAG verbally accepted the equipment telephonically in which he acknowledged, *inter alia*, that all equipment financed and leased by Tygris was delivered, installed, in good condition and unconditionally accepted. True and correct copies of the Verbal Acceptance forms are attached hereto as **Group Exhibit 3**.

16. Although the Equipment Lease constitutes a true lease under Article 2A, Tygris filed UCC Financing Statements with the Louisiana Secretary of State. Attached hereto are true and correct copies of the UCC filings as **Exhibit 4**, including the UCC filings identifying the change from Marcap to Tygris.

17. MAG has defaulted under the terms of the Equipment Lease by failing and refusing to remit monthly payments to Tygris as required.

18. As of May 18, 2010, the total amount due and owing Tygris is $90,713.21, plus continuing interest and late fees, attorneys' fees and costs.

19. Demand has been made on MAG to pay the balance due and owing, but MAG has failed and refused to pay as required.

20. Tygris has performed all of its obligations under the Equipment Lease.

21. Pursuant to the terms of the Equipment Lease, Tygris is entitled to all of its costs and attorneys' fees in the enforcement of the Equipment Lease. Tygris has incurred costs and attorneys fees to date, and will continue to incur these fees and expenses until the amounts due and owing have been paid in full.

WHEREFORE, Tygris Asset Finance, Inc. respectfully requests this Court enter judgment in its favor for all amounts due under the Equipment Lease against M.A.G., L.L.C., plus continuing interest, late fees, costs and attorneys' fees and any further legal or equitable relief this Court deems just.

## COUNT II
### BREACH OF UNCONDITIONAL GUARANTY AS TO EQUIPMENT LEASE AGREEMENT AGAINST STEVEN ZUCKERMAN AND BRUCE GRIZZAFFI

22. Tygris repeats and realleges each of the allegations in Paragraphs 1 through 21 of this Complaint as through fully set forth herein.

23. In order to induce, and as consideration for Tygris to enter into the Equipment Lease, Defendants, Steven Zuckerman and Bruce Grizzaffi, executed and delivered to Tygris a Guaranty, guaranteeing all amounts due to Tygris from MAG under the Equipment Lease. A true and correct copy of the guaranty of Defendants, Steven Zuckerman and Bruce Grizzaffi, is attached as part of the Equipment Lease documents attached hereto as Exhibits 1 and 2.

4

24. Pursuant to the Guaranty, Defendants, Steven Zuckerman and Bruce Grizzaffi, unconditionally, jointly and severally, guaranteed the prompt payment when due of any and all existing and future indebtedness, liabilities and obligations, of every kind and nature, of MAG to Tygris, including interest, and any costs and attorneys' fees incurred by Tygris in trying to recover or collect the indebtedness from MAG.

25. MAG defaulted under the Equipment Lease by failing to make required monthly payments.

26. Pursuant to the Guarantees of Defendants, Steven Zuckerman and Bruce Grizzaffi, Tygris is entitled to recover all collection costs and expenses, including attorneys' fees and expenses.

27. Tygris has performed all of its obligations under the Equipment Lease and Guarantees of Defendants, Steven Zuckerman and Bruce Grizzaffi.

WHEREFORE, Tygris Asset Finance, Inc. respectfully requests this Court enter judgment in its favor for all amounts due under the Guaranty against Steven Zuckerman and Bruce Grizzaffi, plus continuing interest, late fees, costs and attorneys' fees and any further legal or equitable relief this Court deems just.

        Respectfully submitted,
        **TYGRIS ASSET FINANCE, INC. AS SUCCESSOR TO MARCAP LIMITED LIABILITY COMPANY**

    By: /s/ Adam C. Toosley
        Adam C. Toosley

Gary E. Green, Esq., ARDC No. 6199484
Adam C. Toosley, Esq., ARDC No. 6276856
Attorneys for Plaintiff
Clark Hill PLC
150 N. Michigan Avenue, Suite 2700
Chicago, IL 60601
(312) 985-5900

6416441.1 31006/136100

# EXHIBIT 1

# marcap

MARCAP CORPORATION
200 West Jackson, Suite 2000, Chicago, IL 60606
312.425.2424 phone   312.425.2442 fax

**LEASE AGREEMENT NO.** E7120101-01    **DATED:** December 26, 2007

**LESSEE INFORMATION**
- LESSEE NAME (Legal Name): M.A.G. L.L.C.
- TRADE NAME: Neuro Diagnostic Associates
- BILLING ADDRESS: 12734 Frankfurt Avenue, Baton Rouge, LA 70816
- EQUIPMENT ADDRESS: 12734 Frankfurt Avenue, Baton Rouge, LA 70816
- PHONE NO./ FAX NO/EMAIL: (225) 413-7375/
- FEIN OR SSN (required):
- QTY. / MODEL / DESCRIPTION / SN: TWO (2) PORTEKTOR DT ACQUISITION SYSTEMS

**VENDOR INFORMATION**
- VENDOR NAME: XLTEK
- ADDRESS: 2568 Bristol Circle, Ontario, Canada L6H 5SI
- PHONE:
- CONTACT:

**PAYMENT TERMS**
- LEASE TERM (in months): FIFTY-ONE (51) MONTHS, PAYABLE IN ARREARS
- MONTHLY RENTAL PAYMENT: 1-3 AT $0.00, 4-51 AT $1,439.72
- TAXES: TO BE ADDED TO THE MONTHLY RENT
- END OF TERM PURCHASE OPTION: ☐ FAIR MARKET VALUE ("FMV")  ☒ $101.00 BUYOUT (If neither box is checked, FMV applies. If the Lease is a $101.00 Buyout, Section 16 is inapplicable.)

SPECIAL TERMS & CONDITIONS:

We have written this Lease in plain language because We want You to fully understand the terms. We use the words *You* and *Your* to mean the Lessee Indicated above. The words *We*, *Us* and *Our* refer to the Lessor indicated below. This Lease includes this page plus an additional two pages, which combined is the full and final agreement of the parties.

THE UNDERSIGNED HAS EXECUTED THIS LEASE EFFECTIVE AS OF THE DATE AT THE TOP OF THIS PAGE.

THIS LEASE IS NOT BINDING ON US UNTIL IT IS DULY SIGNED BY US BELOW.

**LESSEE:** M.A.G. L.L.C.
- By: [signature]
- Print Name: Bruce Grizzaffi
- Title: Partner
- Date: December 26, 2007

**LESSOR:** MARCAP CORPORATION
- By: [signature]
- Print Name: Peter Myhre
- Title: CEO
- Date:

## GUARANTY

The undersigned ("I" or "Me"), for himself or on behalf of the entity providing this Guaranty, hereby guarantees that Lessee will fully and promptly make all payments and pay all other charges required under this Lease when due and that if Lessee does not perform such payment obligations, I will promptly perform those obligations and all other obligations under the Lease as well as any other past and future obligations that Lessee owes to Lessor. I also agree that Lessor may make other arrangements with Lessee but I will still be responsible for the payments and other obligations set forth in the Lease. I agree that Lessor does not have to notify Me if the Lessee fails to meet any of its obligations under the Lease. If the Lessee fails to meet any of its obligations I will promptly upon receiving knowledge of such failure, immediately pay Lessor in accordance with the default provisions of the Lease all sums due under the Lease and will perform all other obligations of Lessee. I will further reimburse Lessor for all of the expenses Lessor incurs in enforcing any of Lessor's rights against the Lessee or Me, including attorneys' fees. If this Guaranty is that of an entity, I represent and warrant that this Guaranty has been duly authorized by the entity-guarantor and that I am duly authorized to execute this Guaranty on behalf of such guaranteeing entity. THIS GUARANTY WILL BE GOVERNED BY THE LAWS OF THE STATE OF ILLINOIS AND I AGREE THAT THIS GUARANTY HAS BEEN ENTERED INTO IN THE STATE OF ILLINOIS, REGARDLESS OF WHERE IT MAY HAVE BEEN SIGNED. I AGREE AND CONSENT THAT THE COURTS OF THE STATE OF ILLINOIS FOR COOK COUNTY OR ANY FEDERAL DISTRICT COURT HAVING JURISDICTION OVER THAT COUNTY WILL HAVE NON-EXCLUSIVE JURISDICTION FOR THE DETERMINATION OF DISPUTES ARISING UNDER THE LEASE AND/OR THIS GUARANTY. I WAIVE ANY CONVENIENCE-BASED OBJECTIONS I MAY HAVE TO SUCH COURTS BEING AN APPROPRIATE VENUE. I WAIVE TRIAL BY JURY OF ANY LAWSUIT BETWEEN US. No payment under this Guaranty will entitle Me, by subrogation or otherwise, to any payment from the Lessee or out of the property or other assets of the Lessee. I agree that Lessor does not have to sue the Lessee or recover on the equipment before commencing proceedings hereunder. Lessor may release or compromise any other of Lessee's obligations under the Lease without my notice or consent. Lessor's loss of any right to the equipment will not affect my obligation to pay Lessor. I subordinate any rights of subrogation I have against Lessee to all obligations of Lessee to Lessor hereunder.

I have executed this Guaranty effective as of the date at the top of this page.

**Guarantor:** [signature]
- Print Name: Steven Zuckerman
- Address: 510 Hidden Lake Court, Baton Rogue, LA 70810
- SSN: [redacted]

**Guarantor:** [signature]
- Print Name: Bruce Grizzaffi
- Address: 12734 Frankfurt Ave, Baton Rouge, LA 70816
- SSN: [redacted]

## ACCEPTANCE CERTIFICATE

With regard to the Lease, the undersigned certifies that: all equipment has been delivered to Lessee's complete satisfaction; the equipment is in good working order and condition; the equipment conforms to Lessee's requirements; Lessee has unconditionally accepted the equipment; and Lessee acknowledges that the equipment has not been accepted on a trial basis. Lessee hereby authorizes commencement of Lease, including Monthly Rental Payments and payment by Lessor to Vendor. In the event the equipment fails to perform as expected or represented, Lessee will honor this Lease and continue to remit all scheduled Monthly Rental Payments. Lessee will look solely to the Vendor of the equipment for the performance of any covenants and warranties. Lessee indemnifies and holds Lessor harmless for the nonperformance of the equipment. Lessee acknowledges and understands Lessor is not the manufacturer, distributor or Vendor of the leased equipment.

By: [signature]    Bruce Grizzaffi, Partner    December 26, 2007
Signature           Name & Title (Print)        Date

**1. LEASE AGREEMENT:** You agree to Lease from Us and We agree to Lease to You the equipment described on page one. The term "Lease" as used herein refers to and includes terms and conditions of this Lease and any riders or attachments. You promise to pay Us the sum of all the Monthly Rental Payments and tax payments financed by Us. You authorize Us to raise or lower the Monthly Rental Payments, in a proportionate manner, if the actual equipment cost or tax is greater than or less than the original estimated cost.

**2. ORDERING EQUIPMENT:** We will place a purchase order for the equipment You have selected. If You have entered into a purchase order for the equipment, You hereby assign Your rights to Us, and We agree to pay for the equipment. If We receive Your notice of such an equipment defect or objection, We may terminate the Lease and You will remain responsible for any obligations under the purchase order.

**3. EQUIPMENT DELIVERY AND ACCEPTANCE. Equipment** delivery and installation arrangements and costs are solely Your responsibility. You agree to inspect the equipment upon delivery. You assume the risk of any damages if the Vendor fails to deliver the equipment on time, or if the equipment is unsatisfactory for any reason. Unless You provide written notice to the Vendor specifying a material defect in the equipment within seventy-two (72) hours of delivery, or other material and proper objection to the equipment and You deliver a copy of such notice to Us, it shall be conclusively presumed You have unconditionally accepted the equipment.

**4. NO WARRANTIES:** We are leasing the equipment to You "AS IS." WE MAKE NO WARRANTIES, EXPRESS OR IMPLIED, INCLUDING WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE OR USE. If the Vendor or anyone else has made a representation or warranty as to the equipment or any other matter, You agree that any such representation or warranty is not binding on Us, nor will the breach of such relieve You of, or in any way affect, any of Your obligations under this Lease. IF THE EQUIPMENT IS NOT SATISFACTORY FOR ANY REASON, YOU WILL MAKE YOUR CLAIM ONLY AGAINST THE VENDOR, NOT US, AND YOU WILL CONTINUE TO PAY TO US ALL MONTHLY RENTAL PAYMENTS. If You are not in default under any terms of this Lease, We transfer to You any warranties made to Us by the Vendor. You agree that regardless of cause, You will not assert any claim whatsoever against Us for loss of profits You expect to make or any direct, special, indirect or consequential damages. If the cost of Your maintenance agreement is to be paid by Us to the Vendor or someone else, You acknowledge that We are still not responsible for service, repairs, or maintenance of the equipment and that We are not a party to any such service or maintenance agreement. If You have a dispute regarding equipment service, repairs or maintenance, You will continue to pay Us all Monthly Rental Payments.

**5. NO VENDOR AGENCY:** You understand and agree that the Vendor, its agents and employees are not agents of Ours and they are not authorized to waive or change any term or condition of this Lease.

**6. NON-CANCELABLE LEASE:** THIS LEASE CANNOT BE CANCELED BY YOU FOR ANY REASON.

**7. TERM; MONTHLY RENTAL PAYMENTS:** The Lease term will start on the date that any equipment is delivered and accepted by You or Your agent (the "Start Date") and will continue until You have met all of Your Lease obligations. If for any reason the Lease does not start, We will not refund to You any fee or required deposit that You made to Us. Monthly Rental Payments are payable monthly in advance as stated in the Payment Terms on page one of the Lease. Monthly Rental Payments will commence on the Start Date with subsequent payments due on the same day of each month ("Payment Date") thereafter. All payments will be made to Us at Our address on this Lease, or at such address that We may designate in writing. YOUR OBLIGATION TO PAY MONTHLY RENTAL PAYMENTS TO US IS ABSOLUTE AND UNCONDITIONAL AND NOT SUBJECT TO ANY REDUCTION, SET-OFF, DEFENSE, OR COUNTERCLAIM FOR ANY REASON WHATSOEVER, INCLUDING ANY MATTER ARISING OUT OF ANY PRESENT OR FUTURE CLAIM YOU BELIEVE YOU MAY HAVE AGAINST US OR THE MANUFACTURER, VENDOR OR SUPPLIER OF THE EQUIPMENT. You authorize Us to insert in the Lease serial numbers and other identification data about the equipment, as well as other omitted factual matters.

**8. ASSIGNMENT:** You may not sell, transfer, assign or sublease the equipment without Our prior written consent. We may, without notifying You, sell, assign or transfer this Lease and ownership of the equipment. You agree that if We do so, the new Lessor will have the same rights and benefits that We now have, and such new Lessor will not have to perform any of Our obligations. You agree that the rights of the new Lessor will not be subject to any claims, defenses or setoffs You may claim to have against Us. Any such assignment, sale, or transfer of the Lease or equipment will not relieve Us of Our obligations to You under this Lease.

**9. OWNERSHIP:** We are the owner/titleholder of the equipment. If another party attempts to claim an interest in or ownership to the equipment by asserting a claim against You or through You, You agree, at Your expense, to protect and defend Our interests in the equipment. Further, You agree that You will at all times keep the equipment free from any legal process or lien, and You will give Us prompt notice if any legal process or lien is asserted or made against the equipment.

**10. MAINTENANCE, USE, LOCATION, LOSS:** You will maintain the equipment in good operating order and appearance, protect the equipment from deterioration, other than normal wear and tear, and You will not use the equipment for any purpose other than that for which it was designed. You shall, at Your own cost and expense, enter into and maintain in force for the entire Lease term (as well as any applicable renewal term), a standard maintenance contract with the Vendor or a party authorized by Vendor who is acceptable to Us to perform such maintenance (the "Maintenance Contractor"). You will provide Lessor with a complete copy of the Maintenance Contract, promptly upon Our request.

Your obligation regarding the maintenance of the equipment includes, without limitation, all maintenance and repairs recommended or advised either by the Vendor, government agencies or regulatory bodies and those commonly performed according to prudent business and/or professional practices. For any equipment which requires software for its operation, You shall include in such maintenance contract an undertaking by the Vendor to provide any and all fixes, bypasses, updates, enhancements and upgrades available for the Equipment during the Lease term (as well as any renewal term). If the equipment is maintained by a party other than the Vendor, then You will ensure that the Supplier re-certifies the equipment as eligible for the Vendor's standard maintenance contract, at the Supplier's standard rates, prior to the resale of the equipment. You assume and agree to pay for any and all costs necessary to so re-certify the equipment. At any time, promptly upon Our request, You will provide Us with current maintenance and repair records for the equipment which shall be presented in a professional, logical, useable manner so that We can determine whether or not Your maintenance practices relative to the equipment are in compliance with the foregoing and as may be otherwise required by the Maintenance Contract and Lease. You agree that the equipment is and shall remain personal property, regardless of its use or any attachment to real property. You will not make any alterations to the equipment nor will You permanently attach the equipment to any real estate. You will keep and use the equipment only at the equipment address designated by you and shown on the first page of this Lease. You will not remove the equipment from that address without Our prior written consent. You are responsible for protecting the equipment from damage, except ordinary wear and tear, and from any other kind of loss while You possess or control the equipment. In the event the equipment is lost, stolen or damaged, You shall promptly repair or replace the equipment with equipment of comparable value and quality.

**11. TAXES:** You agree to pay when due all property, sales, use, excise and other taxes and assessments, fines and penalties which may be levied against the ownership, possession or use of the equipment or any interest therein, or otherwise relating to this Lease or the equipment and to file all returns related to such payments, unless We notify You otherwise in writing. You will also pay estimated property taxes with each rental payment due hereunder or periodically, as We may bill You. If We pay any of those taxes, fines or penalties for You, You agree to reimburse Us promptly on demand, together with interest at a rate of one and one-half percent (1.5%) per month.

**12. INDEMNITY:** We are not responsible for any injuries or losses to You or any other person caused by the delivery, installation or use of the equipment. You agree to reimburse Us for and defend Us against all claims for such losses or injuries, including, without limitation, claims arising out of tort, negligence or strict liability. Your indemnity continues after the Lease term expires.

**13. INSURANCE:** You agree to provide and maintain at Your own expense at all times during the Lease term (and any extensions): (a) insurance against loss, theft, damage or destruction to the equipment, for the full replacement value, naming Us as loss payee under a lender's loss payee endorsement; and (b) liability and property damage insurance naming Us as an additional insured. Such insurance must be satisfactory to Us and written evidence thereof shall be delivered to Us at Our request. If You fail to provide Us such evidence, then We have the right, but not the obligation to place such insurance for Our protection at Your expense. Your expense will include the full premium charged for such insurance and any customary charges or fees associated with such insurance. You agree to pay such amounts promptly upon Our request, together with interest at a rate of one and one-half percent (1.5%) per month. If any insurance proceeds are paid as a result of any such loss or damage to the equipment, so long as You are not in default under this Lease or any other obligation to Us, then You have the option to: (i) use the insurance proceeds to repair or replace the equipment or (ii) apply the insurance proceeds toward Your Lease obligations. If insurance is placed by Us as provided herein, You will cooperate with Our insurance agent in connection with the placement and processing of any claims.

**14. DEFAULT AND REMEDIES:** You will be in default: if You do not pay when due the Monthly Rental Payments or any other payments due hereunder; if You break any of Your promises under this Lease or under any other lease, loan or agreement with Us; if You become insolvent, assign Your assets for the benefit of Your creditors, or enter (voluntarily or involuntarily) a bankruptcy proceeding; or if You merge into or consolidate with any entity or undergo a change in control, management, ownership or operation not approved by Us in writing. In the event of Your default, We may, at Our election, require You to return the equipment to Us and immediately pay to Us the remaining balance of all the Monthly Rental Payments due and to become due under this Lease. If You fail to return the equipment to Us, We can require that You pay to Us the higher of: the residual interest in the equipment as reflected in Our books and records, or the then retail FMV of the equipment. You also agree to pay Us interest at a rate of one and one-half percent (1.5%) per month on all sums due Us from the date of default until paid, but only to the extent permitted by law. If Your default is caused by Your breaking any of Your promises under this Lease, We shall be entitled to recover from You all damages caused by Your default. We can also use any of the remedies available to Us under the Uniform Commercial Code or any other law. You agree to reimburse Us for Our costs of enforcement of this Lease, including without limitation, Our reasonable attorneys' fees. If We must act to take possession of the equipment, You agree to pay Our costs of repossession, storing, shipping, repairing and selling the equipment. You agree that We do not have to notify You in the event that We are able to sell the equipment.

**15. OTHER RIGHTS:** You agree that any delay or failure to enforce Our rights under this Lease does not prevent Us from enforcing any rights at a later time. Both parties intend this Lease to be a valid and legal document, and agree that if any part is determined to be unenforceable, all other parts will remain in full force and effect. If this document is not found to be a Lease, then You grant Us a security interest in the equipment and all proceeds thereof. In the event

this Lease is determined to be a security agreement, Our recovery will in no event exceed the maximum permitted by law.

**16. PURCHASE OPTION; RENEWAL:** IF NO DEFAULT THEN EXISTS UNDER THIS LEASE, YOU WILL HAVE THE OPTION AT THE END OF THE ORIGINAL OR ANY RENEWAL TERM TO PURCHASE ALL (BUT NOT LESS THAN ALL) OF THE EQUIPMENT IN ACCORDANCE WITH THE END OF TERM PURCHASE OPTION SELECTED BY YOU, PLUS APPLICABLE TAXES. YOU MUST GIVE US AT LEAST 90 DAYS, BUT NO MORE THAN 180 DAYS, WRITTEN NOTICE BY CERTIFIED MAIL BEFORE THE END OF THE ORIGINAL LEASE TERM THAT YOU WISH TO PURCHASE THE EQUIPMENT OR THAT YOU WILL RETURN THE EQUIPMENT TO US. IF YOU DO NOT GIVE US SUCH WRITTEN NOTICE OR IF YOU DO NOT PURCHASE OR RETURN THE EQUIPMENT IN ACCORDANCE WITH THE TERMS AND CONDITIONS HEREOF, THIS LEASE WILL AUTOMATICALLY RENEW FOR AN ADDITIONAL 12 MONTH TERM. THEREAFTER, THIS LEASE SHALL RENEW FOR SUCCESSIVE ONE MONTH TERMS UNTIL YOU RETURN THE EQUIPMENT TO US. DURING ANY RENEWAL TERM, YOUR MONTHLY RENTAL PAYMENT WILL REMAIN THE SAME. IN THE EVENT OF A RENEWAL, ANY ADVANCE PAYMENT OF THE FINAL MONTHLY RENTAL PAYMENT HEREOF WILL BE APPLIED TO THE FINAL MONTH OF THE RENEWAL PERIOD. WE MAY CANCEL AN AUTOMATIC RENEWAL TERM BY SENDING YOU WRITTEN NOTICE TEN (10) DAYS PRIOR TO SUCH RENEWAL TERM. The Fair Market Value ("FMV") of the equipment will be determined objectively by Us. If You do not agree with Our determination of the equipment's FMV, then the FMV (on a retail basis) will be determined at Your expense by an independent appraiser selected by Us. Upon receipt of Your Purchase Option payment, We shall transfer Our interest in the equipment to You "as is, where is, with all faults" without any representations or warranties.

**17. RETURN OF THE EQUIPMENT:** Upon Your election to return the Equipment to Us at the expiration of the Term of the Lease (or any applicable renewal term) or upon the earlier termination of the Lease by Your default or for any other reason, You shall, at Your sole expense, shall return all, and not less than all, of the equipment leased under the Lease to Us by delivering it to such place as We may designate and on board such carrier as We specify. All returned equipment shall be received by Us in good operating order and appearance, other than normal wear and tear, along with the original version of all warranties, manuals, licenses and instructions provided to You by the Vendor. You further acknowledge and agree that: You shall provide Us with a detailed written inventory of all models, including without limitation, all serial numbers of the equipment to be returned; the disassembly and crating of the equipment will be performed according to the Vendor's instructions and specifications; the equipment will be packed and shipped fully insured to the destination We specify; You shall obtain and pay for a policy of transit insurance for the delivery period in an amount equal to the higher of the replacement value or fair market value of the Equipment and We shall be named as Loss Payee on such policies; You will indemnify and hold Us harmless for any damages to equipment incurred at the disassembly site and in transit; You will provide written certification from the Vendor or maintenance contractor that the equipment meets all current and up to date specifications, is in compliance with all pertinent governmental or regulatory rules, laws or guidelines for its operation or use, is qualified for the Vendor's or maintenance contractor's standard maintenance contract and is at then-current release, revision and engineering change levels (the "Refurbishment") and If the equipment is not so certified You will pay all costs necessary for the Refurbishment. If the equipment or any part of the equipment is software, You will cause any and all software subject to this Lease to be deinstalled and audited by the maintenance contractor or another party acceptable to Us and undertake such steps We deem necessary to relicense the software. If any software requires relicensing, You shall bear all costs of such relicensing.

**18. LATE CHARGES:** If any part of a Monthly Rental Payment is not received by Us within five (5) days of its Payment Date, You agree to pay Us a late charge equal ten percent (10%) of each such late payment on the next Payment Date, but only to the extent permitted by law.

**19. UCC-ARTICLE 2A PROVISIONS; FINANCING STATEMENTS:** You agree that this Lease is a "Finance Lease" under Article 2A of the Uniform Commercial Code ("UCC") of the State of Illinois; You acknowledge that (a) We did not select, manufacturer or supply the equipment, but We did purchase the equipment for lease to You; and (b) We have given You the name of the Vendor of the equipment You are leasing from Us. We hereby notify You that You may have rights under the sale or supply contracts and that You may contact Vendor for a description of Your rights and/or warranties. To the extent permitted by applicable law, You waive any and all rights and remedies conferred upon You as Lessee, purchaser or otherwise under the UCC. You authorize Us to sign and file financing statements and other applicable documents with respect to Our interest in the equipment. You appoint Us as Your attorney-in-fact to sign such financing statements and documents on Your behalf. If this Lease is deemed at any time to be one intended as security, then You hereby grant Us a security interest in the equipment and the proceeds from any sale, lease or disposition of the equipment.

**20. LESSEE'S REPRESENTATIONS AND WARRANTIES:** You hereby represent, warrant and agree that, (a) the execution, delivery and performance thereof has been duly authorized by all necessary action; (b) each individual executing such was duly authorized to do so; (c) this Lease constitutes a legal, valid and binding agreement enforceable in accordance with its terms; and (d) the execution, delivery and performance of this Lease will not violate any law or regulation applicable to You, or cause a default under any agreement of Yours.

**21. ADDITIONAL SECURITY:** You grant Us a security interest in all the property You own, including any goods, chattels, fixtures, furniture, equipment, assets, accounts receivable, contract rights and general intangibles, wherever located as well as any related proceeds. Any security interest created by this Lease secures Your obligations to Us.

**22. CREDIT INFORMATION:** You authorize Us or any of Our affiliates to obtain credit bureau reports, and make other credit inquiries that We determine are appropriate. You agree to give Us financial statements and copies of Your tax returns on Our request.

**23. CROSS-COLLATERALIZATION:** Any collateral of any nature whatsoever pledged to secure any of Your obligations to Us shall secure all of Your obligations under any lease, loan or other agreement with Us.

**24. MISCELLANEOUS:** If You fail to comply with any part of this Lease, We can, but We do not have to, take any action necessary to effect Your compliance upon five (5) days' prior written notice to You. If We are required to pay any amount to obtain Your compliance, the amount We pay plus all of Our expenses in causing Your compliance, will become additional rent and will be paid by You at the time for the next Payment Date. If any notices are required under this Lease, they will be sufficient if given personally or mailed to the address set forth in this Lease by certified or registered mail, postage prepaid. This Lease is for the benefit of and is binding upon You and Your personal representatives, successors and assigns. THIS LEASE WILL BE BINDING WHEN ACCEPTED IN WRITING BY US AND WILL BE GOVERNED BY THE LAWS OF THE STATE OF ILLINOIS, PROVIDED HOWEVER, IN THE EVENT THIS LEASE OR ANY OF ITS PROVISIONS CANNOT BE ENFORCED UNDER THE LAWS OF ILLINOIS THEN THE LAWS OF THE STATE WHERE THE EQUIPMENT IS LOCATED WILL GOVERN. YOU AGREE THAT THE COURTS OF THE STATE OF ILLINOIS FOR COOK COUNTY OR ANY FEDERAL DISTRICT COURT HAVING JURISDICTION IN THAT COUNTY WILL HAVE EXCLUSIVE JURISDICTION FOR DETERMINING ALL DISPUTES ARISING UNDER THIS LEASE. You agree and consent that We may serve You by registered or certified mail, which will be sufficient to obtain jurisdiction. Nothing stated in this Lease is intended to prevent Us from commencing any action in any court having proper jurisdiction if We so elect. YOU WAIVE TRIAL BY JURY IN ANY ACTION BETWEEN US.

**25. SIGNATURE AUTHORIZATION:** The person who signed this Lease is a duly authorized and empowered department head, manager, office manager, purchasing agent or person of similar authority who has the power to execute this Lease and any other documentation deemed necessary by Us.

**26. ENTIRE AGREEMENT; CHANGES:** This Lease contains the entire agreement between the parties and it may not be altered, amended, modified, terminated or otherwise changed except in writing and signed by both parties.

**27. FAX DOCUMENTS:** For purposes of negotiating and finalizing this Lease (including any subsequent amendments thereof), any signed document transmitted by facsimile machine or other electronic means ("FAX") shall be treated in all manner and respects as an original document. The signature of any party by FAX or other electronic means shall be considered for these purposes as an original signature. Any such document sent by FAX or other electronic means shall be considered to have the same binding legal effect as an original document. At the request of either party, any document sent via FAX or other electronic means shall be re-executed by both parties in an original form. The parties hereby agree that neither shall raise the use of the FAX or other electronic means or the fact that any signature or document was transmitted or communicated through the use of a FAX or other electronic means as a defense to the formation of this Lease.

# EXHIBIT 2

# marcap

MARCAP CORPORATION
200 West Jackson, Suite 2000, Chicago, IL 60606
312.425.2424 phone  312.425.2442 fax

| | | | |
|---|---|---|---|
| LEASE AGREEMENT NO. | E7120101-02 | DATED: | January 9, 2008 |

**LESSEE INFORMATION**
- LESSEE NAME (Legal Name): M.A.G. L.L.C.
- TRADE NAME: Neuro Diagnostic Associates
- BILLING ADDRESS: 12734 Frankfurt Avenue, Baton Rouge, LA 70816
- EQUIPMENT ADDRESS: 12734 Frankfurt Avenue, Baton Rouge, LA 70816
- PHONE NO./ FAX NO./EMAIL: (225) 413-7375 /  /
- FEIN OR SSN (required):
- QTY. / MODEL / DESCRIPTION / SN: TWO (2) PORTEKTOR DT ACQUISITION SYSTEMS

**VENDOR INFORMATION**
- VENDOR NAME: XLTEK
- ADDRESS: 2568 Bristol Circle, Ontario, Canada L6H 5S1
- PHONE:
- CONTACT:

**PAYMENT TERMS**
- LEASE TERM (in months): FIFTY-ONE (51) MONTHS, PAYABLE IN ARREARS
- MONTHLY RENTAL PAYMENT: 1-3 AT $0.00, 4-51 AT $1,439.72
- TAXES: TO BE ADDED TO THE MONTHLY RENT
- END OF TERM PURCHASE OPTION: ☐ FAIR MARKET VALUE ("FMV") ☒ $101.00 BUYOUT (If neither box is checked, FMV applies. If the Lease is a $101.00 Buyout, Section 16 is inapplicable.)

SPECIAL TERMS & CONDITIONS:

We have written this Lease in plain language because We want You to fully understand the terms. We use the words *You* and *Your* to mean the Lessee indicated above. The words *We*, *Us* and *Our* refer to the Lessor indicated below. This Lease includes this page plus an additional two pages, which combined is the full and final agreement of the parties.

THE UNDERSIGNED HAS EXECUTED THIS LEASE EFFECTIVE AS OF THE DATE AT THE TOP OF THIS PAGE.

THIS LEASE IS NOT BINDING ON US UNTIL IT IS DULY SIGNED BY US BELOW.

LESSEE: M.A.G. L.L.C.
By: [signature]
Print Name: Bruce Grizzaffi
Title: Partner
Date: 1-10-08

LESSOR: MARCAP CORPORATION
By: [signature]
Print Name: Peter Myhre
Title: CEO
Date:

## GUARANTY

The undersigned ("I" or "Me"), for himself or on behalf of the entity providing this Guaranty, hereby guarantees that Lessee will fully and promptly make all payments and pay all other charges required under this Lease when due and that if Lessee does not perform such payment obligations, I will promptly perform those obligations and all other obligations under the Lease as well as any other past and future obligations that Lessee owes to Lessor. I also agree that Lessor may make other arrangements with Lessee but I will still be responsible for the payments and other obligations set forth in the Lease. I agree that Lessor does not have to notify Me if the Lessee fails to meet any of its obligations under the Lease. If the Lessee fails to meet any of its obligations I will promptly upon receiving knowledge of such failure, immediately pay Lessor in accordance with the default provisions of the Lease all sums due under the Lease and will perform all other obligations of Lessee. I will further reimburse Lessor for all of the expenses Lessor incurs in enforcing any of Lessor's rights against the Lessee or Me, including attorneys' fees. If this Guaranty is that of an entity, I represent and warrant that this Guaranty has been duly authorized by the entity-guarantor and that I am duly authorized to execute this Guaranty on behalf of such guaranteeing entity. THIS GUARANTY WILL BE GOVERNED BY THE LAWS OF THE STATE OF ILLINOIS AND I AGREE THAT THIS GUARANTY HAS BEEN ENTERED INTO IN THE STATE OF ILLINOIS, REGARDLESS OF WHERE IT MAY HAVE BEEN SIGNED. I AGREE AND CONSENT THAT THE COURTS OF THE STATE OF ILLINOIS FOR COOK COUNTY OR ANY FEDERAL DISTRICT COURT HAVING JURISDICTION OVER THAT COUNTY WILL HAVE NON-EXCLUSIVE JURISDICTION FOR THE DETERMINATION OF DISPUTES ARISING UNDER THE LEASE AND/OR THIS GUARANTY. I WAIVE ANY CONVENIENCE-BASED OBJECTIONS I MAY HAVE TO SUCH COURTS BEING AN APPROPRIATE VENUE. I WAIVE TRIAL BY JURY OF ANY LAWSUIT BETWEEN US. No payment under this Guaranty will entitle Me, by subrogation or otherwise, to any payment from the Lessee or out of the property or other assets of the Lessee. I agree that Lessor does not have to sue the Lessee or recover on the equipment before commencing proceedings hereunder. Lessor may release or compromise any other of Lessee's obligations under the Lease without my notice or consent. Lessor's loss of any right to the equipment will not affect my obligation to pay Lessor. I subordinate any rights of subrogation I have against Lessee to all obligations of Lessee to Lessor hereunder.

I have executed this Guaranty effective as of the date at the top of this page.

Guarantor: [signature]
Print Name: Steven Zuckerman
Address: 510 Hidden Lake Court, Baton Rogue, LA 70810
SSN:

Guarantor: [signature]
Print Name: Bruce Grizzaffi
Address: 12734 Frankfurt Ave, Baton Rouge, LA 70816
SSN:

## ACCEPTANCE CERTIFICATE

With regard to the Lease, the undersigned certifies that: all equipment has been delivered to Lessee's complete satisfaction; the equipment is in good working order and condition; the equipment conforms to Lessee's requirements; Lessee has unconditionally accepted the equipment; and Lessee acknowledges that the equipment has not been accepted on a trial basis. Lessee hereby authorizes commencement of Lease, including Monthly Rental Payments and payment by Lessor to Vendor. In the event the equipment fails to perform as expected or represented, Lessee will honor this Lease and continue to remit all scheduled Monthly Rental Payments. Lessee will look solely to the Vendor of the equipment for the performance of any covenants and warranties. Lessee indemnifies and holds Lessor harmless for the nonperformance of the equipment. Lessee acknowledges and understands Lessor is not the manufacturer, distributor or Vendor of the leased equipment.

By: [signature]
Signature

Bruce Grizzaffi, Partner
Name & Title (Print)

1-10-08
Date

1. **LEASE AGREEMENT:** You agree to Lease from Us and We agree to Lease to You the equipment described on page one. The term "Lease" as used herein refers to and includes terms and conditions of this Lease and any riders or attachments. You promise to pay Us the sum of all the Monthly Rental Payments and tax payments financed by Us. You authorize Us to raise or lower the Monthly Rental Payments, in a proportionate manner, if the actual equipment cost or tax is greater than or less than the original estimated cost.

2. **ORDERING EQUIPMENT:** We will place a purchase order for the equipment You have selected. If You have entered into a purchase order for the equipment, You hereby assign Your rights to Us, and We agree to pay for the equipment. If We receive Your notice of such an equipment defect or objection, We may terminate the Lease and You will remain responsible for any obligations under the purchase order.

3. **EQUIPMENT DELIVERY AND ACCEPTANCE. Equipment** delivery and installation arrangements and costs are solely Your responsibility. You agree to inspect the equipment upon delivery. You assume the risk of any damages if the Vendor fails to deliver the equipment on time, or if the equipment is unsatisfactory for any reason. Unless You provide written notice to the Vendor specifying a material defect in the equipment within seventy-two (72) hours of delivery, or other material and proper objection to the equipment and You deliver a copy of such notice to Us, it shall be conclusively presumed You have unconditionally accepted the equipment.

4. **NO WARRANTIES:** We are leasing the equipment to You "AS IS." WE MAKE NO WARRANTIES, EXPRESS OR IMPLIED, INCLUDING WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE OR USE. If the Vendor or anyone else has made a representation or warranty as to the equipment or any other matter, You agree that any such representation or warranty is not binding on Us, nor will the breach of such relieve You of, or in any way affect, any of Your obligations under this Lease. IF THE EQUIPMENT IS NOT SATISFACTORY FOR ANY REASON, YOU WILL MAKE YOUR CLAIM ONLY AGAINST THE VENDOR, NOT US, AND YOU WILL CONTINUE TO PAY TO US ALL MONTHLY RENTAL PAYMENTS. If You are not in default under any terms of this Lease, We transfer to You any warranties made to Us by the Vendor. You agree that regardless of cause, You will not assert any claim whatsoever against Us for loss of profits You expect to make or any direct, special, indirect or consequential damages. If the cost of Your maintenance agreement is to be paid by Us to the Vendor or someone else, You acknowledge that We are still not responsible for service, repairs, or maintenance of the equipment and that We are not a party to any such service or maintenance agreement. If You have a dispute regarding equipment service, repairs or maintenance, You will continue to pay Us all Monthly Rental Payments.

5. **NO VENDOR AGENCY:** You understand and agree that the Vendor, its agents and employees are not agents of Ours and they are not authorized to waive or change any term or condition of this Lease.

6. **NON-CANCELABLE LEASE:** THIS LEASE CANNOT BE CANCELED BY YOU FOR ANY REASON.

7. **TERM; MONTHLY RENTAL PAYMENTS:** The Lease term will start on the date that any equipment is delivered and accepted by You or Your agent (the "Start Date") and will continue until You have met all of Your Lease obligations. If for any reason the Lease does not start, We will not refund to You any fee or required deposit that You made to Us. Monthly Rental Payments are payable monthly in advance as stated in the Payment Terms on page one of the Lease. Monthly Rental Payments will commence on the Start Date with subsequent payments due on the same day of each month ("Payment Date") thereafter. All payments will be made to Us at Our address on this Lease, or at such address that We may designate in writing. YOUR OBLIGATION TO PAY MONTHLY RENTAL PAYMENTS TO US IS ABSOLUTE AND UNCONDITIONAL AND NOT SUBJECT TO ANY REDUCTION, SET-OFF, DEFENSE, OR COUNTERCLAIM FOR ANY REASON WHATSOEVER, INCLUDING ANY MATTER ARISING OUT OF ANY PRESENT OR FUTURE CLAIM YOU BELIEVE YOU MAY HAVE AGAINST US OR THE MANUFACTURER, VENDOR OR SUPPLIER OF THE EQUIPMENT. You authorize Us to insert in the Lease serial numbers and other identification data about the equipment, as well as other omitted factual matters.

8. **ASSIGNMENT:** You may not sell, transfer, assign or sublease the equipment without Our prior written consent. We may, without notifying You, sell, assign or transfer this Lease and ownership of the equipment. You agree that if We do so, the new Lessor will have the same rights and benefits that We now have, and such new Lessor will not have to perform any of Our obligations. You agree that the rights of the new Lessor will not be subject to any claims, defenses or setoffs You may claim to have against Us. Any such assignment, sale, or transfer of the Lease or equipment will not relieve Us of Our obligations to You under this Lease.

9. **OWNERSHIP:** We are the owner/titleholder of the equipment. If another party attempts to claim an interest in or ownership to the equipment by asserting a claim against You or through You, You agree, at Your expense, to protect and defend Our interests in the equipment. Further, You agree that You will at all times keep the equipment free from any legal process or lien, and You will give Us prompt notice if any legal process or lien is asserted or made against the equipment.

10. **MAINTENANCE, USE, LOCATION, LOSS:** You will maintain the equipment in good operating order and appearance, protect the equipment from deterioration, other than normal wear and tear, and You will not use the equipment for any purpose other than that for which it was designed. You shall, at Your own cost and expense, enter into and maintain in force for the entire Lease term (as well as any applicable renewal term), a standard maintenance contract with the Vendor or a party authorized by Vendor who is acceptable to Us to perform such maintenance (the "Maintenance Contractor"). You will provide Lessor with a complete copy of the Maintenance Contract, promptly upon Our request. Your obligation regarding the maintenance of the equipment includes, without limitation, all maintenance and repairs recommended or advised either by the Vendor, government agencies or regulatory bodies and those commonly performed according to prudent business and/or professional practices. For any equipment which requires software for its operation, You shall include in such maintenance contract an undertaking by the Vendor to provide any and all fixes, bypasses, updates, enhancements and upgrades available for the Equipment during the Lease term (as well as any renewal term). If the equipment is maintained by a party other than the Vendor, then You will ensure that the Supplier re-certifies the equipment as eligible for the Vendor's standard maintenance contract, at the Supplier's standard rates, prior to the resale of the equipment. You assume and agree to pay for any and all costs necessary to so re-certify the equipment. At any time, promptly upon Our request, You will provide Us with current maintenance and repair records for the equipment which shall be presented in a professional, logical, useable manner so that We can determine whether or not Your maintenance practices relative to the equipment are in compliance with the foregoing and as may be otherwise required by the Maintenance Contract and Lease. You agree that the equipment is and shall remain personal property, regardless of its use or any attachment to real property. You will not make any alterations to the equipment nor will You permanently attach the equipment to any real estate. You will keep and use the equipment only at the equipment address designated by you and shown on the first page of this Lease. You will not remove the equipment from that address without Our prior written consent. You are responsible for protecting the equipment from damage, except ordinary wear and tear, and from any other kind of loss while You possess or control the equipment. In the event the equipment is lost, stolen or damaged, You shall promptly repair or replace the equipment with equipment of comparable value and quality.

11. **TAXES:** You agree to pay when due all property, sales, use, excise and other taxes and assessments, fines and penalties which may be levied against the ownership, possession or use of the equipment or any interest therein, or otherwise relating to this Lease or the equipment and to file all returns related to such payments, unless We notify You otherwise in writing. You will also pay estimated property taxes with each rental payment due hereunder or periodically, as We may bill You. If We pay any of those taxes, fines or penalties for You, You agree to reimburse Us promptly on demand, together with interest at a rate of one and one-half percent (1.5%) per month.

12. **INDEMNITY:** We are not responsible for any injuries or losses to You or any other person caused by the delivery, installation or use of the equipment. You agree to reimburse Us for and defend Us against all claims for such losses or injuries, including, without limitation, claims arising out of tort, negligence or strict liability. Your indemnity continues after the Lease term expires.

13. **INSURANCE:** You agree to provide and maintain at Your own expense at all times during the Lease term (and any extensions): (a) insurance against loss, theft, damage or destruction to the equipment, for the full replacement value, naming Us as loss payee under a lender's loss payee endorsement; and (b) liability and property damage insurance naming Us as an additional insured. Such insurance must be satisfactory to Us and written evidence thereof shall be delivered to Us at Our request. If You fail to provide Us such evidence, then We have the right, but not the obligation to place such insurance for Our protection at Your expense. Your expense will include the full premium charged for such insurance and any customary charges or fees associated with such insurance. You agree to pay such amounts promptly upon Our request, together with interest at a rate of one and one-half percent (1.5%) per month. If any insurance proceeds are paid as a result of any such loss or damage to the equipment, so long as You are not in default under this Lease or any other obligation to Us, then You have the option to: (i) use the insurance proceeds to repair or replace the equipment or (ii) apply the insurance proceeds toward Your Lease obligations. If insurance is placed by Us as provided herein, You will cooperate with Our insurance agent in connection with the placement and processing of any claims.

14. **DEFAULT AND REMEDIES:** You will be in default if You do not pay when due the Monthly Rental Payments or any other payments due hereunder; if You break any of Your promises under this Lease or under any other lease, loan or agreement with Us; if You become insolvent, assign Your assets for the benefit of Your creditors, or enter (voluntarily or involuntarily) a bankruptcy proceeding; or if You merge into or consolidate with any entity or undergo a change in control, management, ownership or operation not approved by Us in writing. In the event of Your default, We may, at Our election, require You to return the equipment to Us and immediately pay to Us the remaining balance of all the Monthly Rental Payments due and to become due under this Lease. If You fail to return the equipment to Us, We can require that You pay to Us the higher of: the residual interest in the equipment as reflected in Our books and records, or the then retail FMV of the equipment. You also agree to pay Us interest at a rate of one and one-half percent (1.5%) per month on all sums due Us from the date of default until paid, but only to the extent permitted by law. If Your default is caused by Your breaking any of Your promises under this Lease, We shall be entitled to recover from You all damages caused by Your default. We can also use any of the remedies available to Us under the Uniform Commercial Code or any other law. You agree to reimburse Us for Our costs of enforcement of this Lease, including without limitation, Our reasonable attorneys' fees. If We must act to take possession of the equipment, You agree to pay Our costs of repossession, storing, shipping, repairing and selling the equipment. You agree that We do not have to notify You in the event that We are able to sell the equipment.

15. **OTHER RIGHTS:** You agree that any delay or failure to enforce Our rights under this Lease does not prevent Us from enforcing any rights at a later time. Both parties intend this Lease to be a valid and legal document, and agree that if any part is determined to be unenforceable, all other parts will remain in full force and effect. If this document is not found to be a Lease, then You grant Us a security interest in the equipment and all proceeds thereof. In the event

this Lease is determined to be a security agreement, Our recovery will in no event exceed the maximum permitted by law.

**16. PURCHASE OPTION; RENEWAL:** IF NO DEFAULT THEN EXISTS UNDER THIS LEASE, YOU WILL HAVE THE OPTION AT THE END OF THE ORIGINAL OR ANY RENEWAL TERM TO PURCHASE ALL (BUT NOT LESS THAN ALL) OF THE EQUIPMENT IN ACCORDANCE WITH THE END OF TERM PURCHASE OPTION SELECTED BY YOU, PLUS APPLICABLE TAXES. YOU MUST GIVE US AT LEAST 90 DAYS, BUT NO MORE THAN 180 DAYS, WRITTEN NOTICE BY CERTIFIED MAIL BEFORE THE END OF THE ORIGINAL LEASE TERM THAT YOU WISH TO PURCHASE THE EQUIPMENT OR THAT YOU WILL RETURN THE EQUIPMENT TO US. IF YOU DO NOT GIVE US SUCH WRITTEN NOTICE OR IF YOU DO NOT PURCHASE OR RETURN THE EQUIPMENT IN ACCORDANCE WITH THE TERMS AND CONDITIONS HEREOF, THIS LEASE WILL AUTOMATICALLY RENEW FOR AN ADDITIONAL 12 MONTH TERM. THEREAFTER, THIS LEASE SHALL RENEW FOR SUCCESSIVE ONE MONTH TERMS UNTIL YOU RETURN THE EQUIPMENT TO US. DURING ANY RENEWAL TERM, YOUR MONTHLY RENTAL PAYMENT WILL REMAIN THE SAME. IN THE EVENT OF A RENEWAL, ANY ADVANCE PAYMENT OF THE FINAL MONTHLY RENTAL PAYMENT HEREOF WILL BE APPLIED TO THE FINAL MONTH OF THE RENEWAL PERIOD. WE MAY CANCEL AN AUTOMATIC RENEWAL TERM BY SENDING YOU WRITTEN NOTICE TEN (10) DAYS PRIOR TO SUCH RENEWAL TERM. The Fair Market Value ("FMV") of the equipment will be determined objectively by Us. If You do not agree with Our determination of the equipment's FMV, then the FMV (on a retail basis) will be determined at Your expense by an independent appraiser selected by Us. Upon receipt of Your Purchase Option payment, We shall transfer Our interest in the equipment to You "as is, where is, with all faults" without any representations or warranties.

**17. RETURN OF THE EQUIPMENT:** Upon Your election to return the Equipment to Us at the expiration of the Term of the Lease (or any applicable renewal term) or upon the earlier termination of the Lease by Your default or for any other reason, You shall, at Your sole expense, shall return all, and not less than all, of the equipment leased under the Lease to Us by delivering it to such place as We may designate and on board such carrier as We specify. All returned equipment shall be received by Us in good operating order and appearance, other than normal wear and tear, along with the original version of all warranties, manuals, licenses and instructions provided to You by the Vendor. You further acknowledge and agree that: You shall provide Us with a detailed written inventory of all models, including without limitation, all serial numbers of the equipment to be returned; the disassembly and crating of the equipment will be performed according to the Vendor's instructions and specifications; the equipment will be packed and shipped fully insured to the destination We specify; You shall obtain and pay for a policy of transit insurance for the delivery period in an amount equal to the higher of the replacement value or fair market value of the Equipment and We shall be named as Loss Payee on such policies; You will indemnify and hold Us harmless for any damages to equipment incurred at the disassembly site and in transit; You will provide written certification from the Vendor or maintenance contractor that the equipment meets all current and up to date specifications, is in compliance with all pertinent governmental or regulatory rules, laws or guidelines for its operation or use, is qualified for the Vendor's or maintenance contractor's standard maintenance contract and is at then-current release, revision and engineering change levels (the "Refurbishment") and if the equipment is not so certified You will pay all costs necessary for the Refurbishment. If the equipment or any part of the equipment is software, You will cause any and all software subject to this Lease to be deinstalled and audited by the maintenance contractor or another party acceptable to Us and undertake such steps We deem necessary to relicense the software. If any software requires relicensing, You shall bear all costs of such relicensing.

**18. LATE CHARGES:** If any part of a Monthly Rental Payment is not received by Us within five (5) days of its Payment Date, You agree to pay Us a late charge equal ten percent (10%) of each such late payment on the next Payment Date, but only to the extent permitted by law.

**19. UCC-ARTICLE 2A PROVISIONS; FINANCING STATEMENTS:** You agree that this Lease is a "Finance Lease" under Article 2A of the Uniform Commercial Code ("UCC") of the State of Illinois; You acknowledge that (a) We did not select, manufacturer or supply the equipment, but We did purchase the equipment for lease to You; and (b) We have given You the name of the Vendor of the equipment You are leasing from Us. We hereby notify You that You may have rights under the sale or supply contracts and that You may contact Vendor for a description of Your rights and/or warranties. To the extent permitted by applicable law, You waive any and all rights and remedies conferred upon You as Lessee, purchaser or otherwise under the UCC. You authorize Us to sign and file financing statements and other applicable documents with respect to Our interest in the equipment. You appoint Us as Your attorney-in-fact to sign such financing statements and documents on Your behalf. If this Lease is deemed at any time to be one intended as security, then You hereby grant Us a security interest in the equipment and the proceeds from any sale, lease or disposition of the equipment.

**20. LESSEE'S REPRESENTATIONS AND WARRANTIES:** You hereby represent, warrant and agree that, (a) the execution, delivery and performance thereof has been duly authorized by all necessary action; (b) each individual executing such was duly authorized to do so; (c) this Lease constitutes a legal, valid and binding agreement enforceable in accordance with its terms; and (d) the execution, delivery and performance of this Lease will not violate any law or regulation applicable to You, or cause a default under any agreement of Yours.

**21. ADDITIONAL SECURITY:** You grant Us a security interest in all the property You own, including any goods, chattels, fixtures, furniture, equipment, assets, accounts receivable, contract rights and general intangibles, wherever located as well as any related proceeds. Any security interest created by this Lease secures Your obligations to Us.

**22. CREDIT INFORMATION:** You authorize Us or any of Our affiliates to obtain credit bureau reports, and make other credit inquiries that We determine are appropriate. You agree to give Us financial statements and copies of Your tax returns on Our request.

**23. CROSS-COLLATERALIZATION:** Any collateral of any nature whatsoever pledged to secure any of Your obligations to Us shall secure all of Your obligations under any lease, loan or other agreement with Us.

**24. MISCELLANEOUS:** If You fail to comply with any part of this Lease, We can, but We do not have to, take any action necessary to effect Your compliance upon five (5) days' prior written notice to You. If We are required to pay any amount to obtain Your compliance, the amount We pay plus all of Our expenses in causing Your compliance, will become additional rent and will be paid by You at the time for the next Payment Date. If any notices are required under this Lease, they will be sufficient if given personally or mailed to the address set forth in this Lease by certified or registered mail, postage prepaid. This Lease is for the benefit of and is binding upon You and Your personal representatives, successors and assigns. THIS LEASE WILL BE BINDING WHEN ACCEPTED IN WRITING BY US AND WILL BE GOVERNED BY THE LAWS OF THE STATE OF ILLINOIS, PROVIDED HOWEVER, IN THE EVENT THIS LEASE OR ANY OF ITS PROVISIONS CANNOT BE ENFORCED UNDER THE LAWS OF ILLINOIS THEN THE LAWS OF THE STATE WHERE THE EQUIPMENT IS LOCATED WILL GOVERN. YOU AGREE THAT THE COURTS OF THE STATE OF ILLINOIS FOR COOK COUNTY OR ANY FEDERAL DISTRICT COURT HAVING JURISDICTION IN THAT COUNTY WILL HAVE EXCLUSIVE JURISDICTION FOR DETERMINING ALL DISPUTES ARISING UNDER THIS LEASE. You agree and consent that We may serve You by registered or certified mail, which will be sufficient to obtain jurisdiction. Nothing stated in this Lease is intended to prevent Us from commencing any action in any court having proper jurisdiction if We so elect. YOU WAIVE TRIAL BY JURY IN ANY ACTION BETWEEN US.

**25. SIGNATURE AUTHORIZATION:** The person who signed this Lease is a duly authorized and empowered department head, manager, office manager, purchasing agent or person of similar authority who has the power to execute this Lease and any other documentation deemed necessary by Us.

**26. ENTIRE AGREEMENT; CHANGES:** This Lease contains the entire agreement between the parties and it may not be altered, amended, modified, terminated or otherwise changed except in writing and signed by both parties.

**27. FAX DOCUMENTS:** For purposes of negotiating and finalizing this Lease (including any subsequent amendments thereof), any signed document transmitted by facsimile machine or other electronic means ("FAX") shall be treated in all manner and respects as an original document. The signature of any party by FAX or other electronic means shall be considered for these purposes as an original signature. Any such document sent by FAX or other electronic means shall be considered to have the same binding legal effect as an original document. At the request of either party, any document sent via FAX or other electronic means shall be re-executed by both parties in an original form. The parties hereby agree that neither shall raise the use of the FAX or other electronic means or the fact that any signature or document was transmitted or communicated through the use of a FAX or other electronic means as a defense to the formation of this Lease.

# EXHIBIT 3

# VERBAL ACCEPTANCE

Has the equipment been delivered:          (Yes)      No

Is the equipment in good working condition:     Yes       No

Will you authorize MarCap to pay the vendor
for the equipment:                          (Yes)      No

Will you authorize MarCap to commence the lease?  (Yes)   No

Does Delivery & Acceptance Certificate need to be     Yes    (No)
Signed? If so, e-mail to customer & request to be dated
the same date as call.

Comments: _Billing + Equipment same as lease_

Spoke to: _Bruce Grizzaffi_        Date: _1/22/08_
Phone #: _225-413-7375_

# VERBAL ACCEPTANCE

Has the equipment been delivered: **(Yes)** No

Is the equipment in good working condition: Yes No

Will you authorize MarCap to pay the vendor for the equipment: **(Yes)** No

Will you authorize MarCap to commence the lease? **(Yes)** No

Does Delivery & Acceptance Certificate need to be Signed? If so, e-mail to customer & request to be dated the same date as call. Yes **(No)**

Comments: _____
_____
_____
_____
_____
_____
_____
_____

Spoke to: Bruce Grizzaffi    Date: 1/31/08
Phone #: 225-413-7575

# EXHIBIT 4

UCC NUMBER 17- 1322430
FILED AND RECORDED
EAST BATON ROUGE PARISH, LA.

2008 JAN 22 PM 12:03:28
DOUG WELBORN

CLERK OF COURT & RECORDER

CERTIFIED TRUE COPY
BY _____
DEPUTY CLERK & RECORDER

## UCC FINANCING STATEMENT AMENDMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

**A. NAME & PHONE OF CONTACT AT FILER [optional]**
CSC Diligenz, Inc.   1-800-858-5294

**B. SEND ACKNOWLEDGMENT TO:** (Name and Address)

31633318
CSC Diligenz, Inc.
6500 Harbour Heights Pkwy, Suite 400
Mukilteo, WA 98275

Filed In: Louisiana  East Baton Rouge Parish

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1a. INITIAL FINANCING STATEMENT FILE #**
17-1321706   1/4/08

**1b.** This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.

**2.** ☐ TERMINATION: Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination Statement.

**3.** ☐ CONTINUATION: Effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.

**4.** ☐ ASSIGNMENT (full or partial): Give name of assignee in item 7a or 7b and address of assignee in item 7c; and also give name of assignor in item 9.

**5. AMENDMENT (PARTY INFORMATION):** This Amendment affects ☐ Debtor or ☐ Secured Party of record. Check only one of these two boxes.

Also check one of the following three boxes and provide appropriate information in items 6 and/or 7.
☐ CHANGE name and/or address: Please refer to the detailed instructions in regards to changing the name/address of a party.
☐ DELETE name: Give record name to be deleted in item 6a or 6b.
☐ ADD name: Complete item 7a or 7b, and also item 7c; also complete items 7e-7g (if applicable).

**6. CURRENT RECORD INFORMATION:**

**6a. ORGANIZATION'S NAME**
M.A.G. L.L.C.

OR **6b. INDIVIDUAL'S LAST NAME** | FIRST NAME | MIDDLE NAME | SUFFIX

**7. CHANGED (NEW) OR ADDED INFORMATION:**

**7a. ORGANIZATION'S NAME**

OR **7b. INDIVIDUAL'S LAST NAME** | FIRST NAME | MIDDLE NAME | SUFFIX

**7c. MAILING ADDRESS** | CITY | STATE | POSTAL CODE | COUNTRY

**7d. SEE INSTRUCTIONS** | ADD'L INFO RE ORGANIZATION DEBTOR | **7e. TYPE OF ORGANIZATION** | **7f. JURISDICTION OF ORGANIZATION** | **7g. ORGANIZATIONAL ID #, if any** ☐ NONE

**8. AMENDMENT (COLLATERAL CHANGE):** check only one box.
Describe collateral ☐ deleted or ☐ added, or give entire ☒ restated collateral description, or describe collateral ☐ assigned.
Four (4) XLTEK Protektor DT Acquisition Systems together with all parts, replacements, additions or substitutions to and for such equipment.

**9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT** (name of assignor, if this is an Assignment). If this is an Amendment authorized by a Debtor which adds collateral or adds the authorizing Debtor, or if this is a Termination authorized by a Debtor, check here ☐ and enter name of DEBTOR authorizing this Amendment.

**9a. ORGANIZATION'S NAME**
MarCap Corporation

OR **9b. INDIVIDUAL'S LAST NAME** | FIRST NAME | MIDDLE NAME | SUFFIX

**10. OPTIONAL FILER REFERENCE DATA**
E7120101-01 & 02

31633318

FILING OFFICE COPY — UCC FINANCING STATEMENT AMENDMENT (FORM UCC3) (REV. 05/22/02)

LOUISIANA SECRETARY OF STATE
OFFICE OF UNIFORM COMMERCIAL CODE/CENTRAL REGISTRY
CONFIRMATION OF FILING

MARCAP CORPORATION
200 W. JACKSON BLVD., SUITE 2000
CHICAGO, IL 60606

Pursuant to La.R.S.10:9-523(g), this is a confirmation that the following
information has been received and included within the Secretary of State's
master index of Uniform Commercial Code filings. Note that this confirmation
does not constitute a determination of the legal sufficiency of the filing.

Any questions regarding the filing information contained herein should be directed
to the filing officer which accepted and recorded the filing. General UCC
assistance may be obtained by contacting our UCC Division at 225-922-1193.

Jay Dardenne
Secretary of State
=================================================================================
ORIGINAL FILE NUMBER 17-1321706　　FILED　1/04/08 10:52 AM
　　　　　　　　　　　　　　　　　　　PARISH IN WHICH FILED:　EAST BATON ROUGE


SUBSEQUENT FILINGS

1.　AMENDMENT　　　　FILE NUMBER 17-1322430　　FILED　1/22/08 12:03 PM　　EAST BATON ROUGE
　　　　　　　　　　AMEND COLLATERAL DESCRIPTION; ETC. SEE ORIGINAL
　　DEBTOR(S)
　　M.A.G. L.L.C.　　　　　　　　　　　　　　　　　　　　　　　　　　000000000
　　12734 FRANKFURT AVENUE
　　BATON ROUGE, LA 70816

　　SECURED PARTY
　　MARCAP CORPORATION　　　　　　　　　　　　　　　　　　　　　　　000000000
　　200 W. JACKSON BLVD., SUITE 2000
　　CHICAGO, IL 60606

**LOUISIANA SECRETARY OF STATE**
**OFFICE OF UNIFORM COMMERCIAL CODE/CENTRAL REGISTRY**
**CONFIRMATION OF FILING**

```
MARCAP CORPORATION
200 W. JACKSON BLVD., SUITE 2000
CHICAGO, IL 60606
```

Pursuant to La.R.S.10:9-523(g), this is a confirmation that the following information has been received and included within the Secretary of State's master index of Uniform Commercial Code filings. Note that this confirmation does not constitute a determination of the legal sufficiency of the filing.

This filing will lapse on 1-04-2013 unless continued or terminated. We encourage filers to take full advantage of the six-month window of opportunity in which to file UCC-3 continuations. Submission of your documents at the onset of the six-month window will allow ample time to rectify potential filing errors and help to assure timely recording of your filing.

Any questions regarding the filing information contained herein should be directed to the filing officer which accepted and recorded the filing. General UCC assistance may be obtained by contacting our UCC Division at 225-922-1193.

Jay Dardenne
Secretary of State

================================================================================

ORIGINAL FILE NUMBER 17-1321706    FILED  1/04/08 10:52 AM
                                   PARISH IN WHICH FILED:   EAST BATON ROUGE

DEBTOR(S)
M.A.G. L.L.C.                                                      000000000
12734 FRANKFURT AVENUE
BATON ROUGE, LA 70816

ORIGINAL SECURED PARTY
MARCAP CORPORATION                                                 000000000
200 W. JACKSON BLVD., SUITE 2000
CHICAGO, IL 60606

PROPERTY
TWO (2) PORTEKTOP LT SYSTEM TOGETHER WITH ALL PARTS,
REPLACEMENTS, ADDITIONS OR SUBSTITUTIONS TO AND FOR SUCH
EQUIPMENT